# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
### PINE BLUFF DIVISION

CARMEN HENDRICKSON-ATKINSON
ADC #706830                                                                    PETITIONER

VS.                                        5:05CV00099 JMM/JTR

LARRY NORRIS, Director,
Arkansas Department of Correction                                             RESPONDENT

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

## INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge James M. Moody. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Clerk no later than eleven (11) days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the United States District Judge, you must, at the same time that you file your written objections, include a "Statement of Necessity" that sets forth the following:

1.      Why the record made before the Magistrate Judge is inadequate.

2. Why the evidence to be proffered at the requested hearing before the United States District Judge was not offered at the hearing before the Magistrate Judge.

3. An offer of proof setting forth the details of any testimony or other evidence (including copies of any documents) desired to be introduced at the requested hearing before the United States District Judge.

From this submission, the United States District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

Clerk, United States District Court
Eastern District of Arkansas
600 West Capitol Avenue, Suite 402
Little Rock, AR 72201-3325

## I. Background

On April 7, 2005, Petitioner, Carmen Hendrickson-Atkinson, initiated this action by filing a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (Docket entry #2.) Before addressing the merits of Petitioner's habeas claims, the Court will briefly review the relevant underlying facts and the procedural history of this case in state court.

On June 23, 2000, Petitioner was convicted in Lonoke County Circuit Court of the first-degree murder of her long-time boyfriend, Joshua Smith ("Smith"). Smith was shot and killed by Richard Lackie ("Lackie"), a man with whom Petitioner had an affair. Witness testimony and other evidence established that Lackie shot and killed Smith at Petitioner's request. *See generally Atkinson v. State*, 347 Ark. 336, 64 S.W.3d 259 (2002) (discussing sufficiency of the evidence). Based on her "accomplice liability," Petitioner was sentenced to life imprisonment in the Arkansas Department of Correction.

Petitioner appealed to the Arkansas Supreme Court, where she argued that: (1) there was insufficient evidence to support her conviction; and (2) she was erroneously refused a jury instruction on second-degree murder. On August 16, 2001, while Petitioner's direct appeal was pending, the State moved to remand the case to develop the record regarding an error that it discovered, which had been neither briefed nor abstracted by Petitioner.[1]  (Docket entry #18, Ex. A, Remand Tr. at 2-4.)  Specifically, the record reflected that the jury sent the trial court a note during guilt-phase deliberations. While the trial court discussed the note and a response with Petitioner and her attorney, the record did not show whether, or how, the response was communicated to the jury.[2]

---

[1]Where a state prisoner is sentenced to life imprisonment or death, Rule 4-3(h) of the Rules of the Arkansas Supreme Court obligates the Arkansas Attorney General "to make certain and certify that all of [the parties'] objections have been abstracted, or included in the Addendum, and [to] brief all points argued by the appellant and any other points that appear to involve prejudicial error."

[2]During guilt-phase deliberations, the trial court went on record with counsel to discuss a note that was received from the jury:
> TRIAL COURT: The Court has been sent a note by the jury that says - it's got two questions.
> "May we please see the letters written by Carmen to Richard in jail?  Also statements to police by Carmen on October One and October Two?"
> DEFENSE COUNSEL: The letters were not introduced.
> TRIAL COURT: Well, and neither were the statements.  So I purport to state that these were - are not - these physical items are not in evidence.  They will have to rely on -
> PROSECUTOR: "You have the evidence before you."
> TRIAL COURT: Well, I'm going to do a little bit more than that.  I'm going to - unless somebody just strenuously objects, I'm going to tell them that the physical statements are not in front of them.  Does anyone have an objection?
> * * *
> TRIAL COURT: I'm just going to say that the letters and the statements, the written forms, are not in evidence.  The spoken word is what they have to consider.  Does anybody have an objection to that?
> PROSECUTOR: No, sir.  That's good, Judge.
> DEFENSE COUNSEL: It's a correct statement of the law.
> TRIAL COURT: Yes, it is.

According to the State, remand was necessary to resolve this issue, as it was determinative of whether a violation of Ark. Code Ann. § 16-89-125(e) occurred and, if so, whether the State could rebut the presumption of prejudice from a violation of the statute.[3]  On September 6, 2001, the Arkansas Supreme Court issued a writ of certiorari remanding the case to the trial court to settle the record on this issue.[4]  (Remand Tr. At 1.)

On September 27, 2001, the trial court conducted an evidentiary hearing.[5]  (Remand Tr. at 9-24.)  Lona McCastlain, the Lonoke County Prosecuting Attorney, testified that Judge Hanshaw

_____

(Remand Tr. at 22-24.)  This exchange occurred on June 22, 2000, the final day of a three-day jury trial.  Petitioner was represented at trial by two appointed lawyers, John Stratford and Edgar Thompson.  The case was prosecuted by Lonoke Prosecuting Attorney Lona McCastlain, and Tim Blair, a deputy. Following the exchange regarding the note, the trial transcript indicates a recess, with the next transcribed event being the return of the jury verdict about twenty minutes after the jury-note colloquy.  As noted by the Arkansas Supreme Court, there is nothing in the trial transcript to indicate any actual communication between the trial judge and with the jury regarding their note.

[3]The pertinent portion of the statute requires that the judge in a criminal trial call the jury into open court to answer a jury question:

> After the jury retires for deliberation, if there is a disagreement between them as to any part of the evidence or if they desire to be informed on a point of law, they must require the officer to conduct them into court. Upon their being brought into court, the information required must be given in the presence of or after notice to the counsel of the parties."

Ark. Code Ann. § 16-89-125(e).  Compliance with the statute is mandatory, and "noncompliance with this statutory provision gives rise to a presumption of prejudice, and the State bears the burden of overcoming that presumption." *Bledsoe v. State*, 344 Ark. 86, 93, 39 S.W.3d 760, 765 (2001).

[4]The parties did not provide the Court with the record developed at the remand hearing, nor the Rule 37 record.  The Court has obtained these volumes from the Clerk of the Arkansas Supreme Court and has designated them as part of the record in this case.  (Docket entry #18.)

[5]All lower court proceedings in this case, before and after trial, were presided over by the Honorable Lance L. Hanshaw, Lonoke County Circuit Court Judge ("Judge Hanshaw").

read the jury question in open court, with Petitioner and all counsel present.[6] She testified that "we discussed his [the trial judge's] response and he formulated his response and then reduced it to writing, read [it] into the record and sent it back up to the jury room with the bailiff." (Remand Tr. at 12.) She recalled that the trial judge wrote the response on the actual note sent by the jury.

Clarence Gill, the bailiff, testified that, after the jury gave him the note, he brought it to Judge Hanshaw, who called the parties back into court to tell them about the jury question. Gill stated that Judge Hanshaw "read the note to all of them and answered the note and gave it to me and I carried it back upstairs." Gill affirmed that Judge Hanshaw never entered the jury room after Gill gave him the note. Finally, Gill testified that, other than his taking the note back to the jury, there was no other communication with the jurors after deliberation.

Kathy Minton, the court reporter, testified that the parties agreed on what was to be written in response to the jury's note and then Judge Hanshaw "wrote it [the response] and sent it back up." She also affirmed that Judge Hanshaw's response to the note, as transcribed in the record, was what was written on the note. Minton had not seen the note since Judge Hanshaw handed it to the bailiff, and, on cross-examination, she guessed that the note had been lost.

The State concluded its case without formally calling Judge Hanshaw as a witness, but afterwards invited the Judge to "comment on what he remember[ed]." Judge Hanshaw stated that, as was his general practice, he never entered the jury room during Petitioner' trial. Judge Hanshaw believed that the actual note would have been put loosely back into the file.

---

[6]McCastlain was called and questioned by one of her deputy prosecutors.

Petitioner's attorney during the trial then commented that jury deliberations took place on the third floor of the courthouse, and that he did not recall Judge Hanshaw leaving "the second floor where the courtroom is."

The prosecutor requested Judge Hanshaw to make a "specific finding [of] fact that you know today what the facts were on the day of trial of what exactly happened" so that she could prepare a precedent. Judge Hanshaw responded as follows:

> Based on the evidence that was made today, there were notes [sic] sent to the Court and returned on the same note. The Court did not enter the jury room, did not speak personally with any juror and no rule of law or rule of procedure was violated that day.

(Remand Tr. at 12.).

On October 2, 2001, Judge Hanshaw entered an order which contained the following findings of fact: (1) the jury sent a note to the court during deliberations; (2) bailiff Gill brought the note to the court; (3) the court brought Petitioner, defense lawyers Stratford and Thompson, and prosecutors McCastlain and Blair into court to read them the note, with bailiff Gill and court reporter Minton also present; (4) the court discussed with counsel the appropriate response to the note; (5) the court wrote the response to the jury's questions on the same note and the contents of the response were reported by court reporter Minton; (6) the court gave the note to bailiff Gill, who delivered the note back to the jury; and (7) the court "had no contact with the jury during their deliberations other than through said note." (Remand Tr. at 6-7.)

After the remand hearing, Petitioner's counsel did not submit any briefing to the Arkansas Supreme Court regarding the jury communication issue. On November 15, 2001, two weeks before the Petitioner's direct appeal was submitted to the Arkansas Supreme Court, Petitioner filed a *pro*

*se* Motion which requested the following relief from the Arkansas Supreme Court: (1) she or her attorney be allowed to examine the hearing record; (2) another order be issued to settle the record; (3) appointment of a special judge to preside at another hearing; (4) appointment of new counsel and an order instructing counsel to provide effective assistance at the new hearing; (5) the members of the jury that convicted her be present at the hearing; and (6) an extension of time be allowed for her to file a brief after the hearing. *See Hendickson-Atkinson v. State*, 2001 WL 1558355 (Ark. 2001) (unpublished *per curiam*). The Court dismissed this Motion because, "[h]aving accepted representation by counsel, [Petitioner] is not entitled to be heard by herself *and* counsel." *Id.* at *1 (emphasis in original) (citing *Monts v. Lessenberry*, 305 Ark. 202, 806 S.W.2d 379 (1991)).

On January 10, 2002, the Court affirmed Petitioner's direct appeal. *Atkinson v. State*, 347 Ark. 336, 64 S.W.3d 259 (2002) ("*Atkinson I*"). A majority of the Court concluded that, while Judge Hanshaw's handling of the Jury's note had violated Ark. Code Ann. § 16-89-125(e), the State had "clearly rebutted" the presumption of prejudice arising from the violation:

> The trial court found, without objection by [Petitioner], that its communication with the jury was limited to answering the jury's questions via a note, using the language agreed upon by the parties. The record clearly reflects the substance of the trial court's communication with the jury, and the court answered the jury's questions in the manner agreed upon by the parties in open court. Here, the trial court never had any contact with the jury during deliberations, and [Petitioner] fully agreed with the court and State regarding the answer written on the same note on which the jury had written its questions.

*Atkinson I*, 347 Ark. at 351-52, 64 S.W.3d at 269.[7] The Court unanimously rejected Petitioner's

---

[7]The Court split 4-2 on the jury communication issue, with one Justice not participating in the case. Two Justices dissented and would have reversed, reasoning that the presumption of prejudice arising from a violation of the statute had not been cured, where the trial court could only "reconstruct the language a missing note contained" and the actual note was not available for review. *Atkinson I*, 347 Ark. at 353, 64 S.W.3d at 271 (Thornton, J., dissenting).

other alleged grounds for error.

On March 28, 2002, Petitioner filed a "Rule 37 petition and Petition for Sentence Reduction in Lonoke County Circuit Court, " along with a Motion to Recuse. (Docket entry #18, Ex. B, Rule 37 Tr. at 30-44.) On May 30, 2002, Judge Hanshaw entered an "Order Denying Rule 37 Petition" without a hearing.[8] (Rule 37 Tr. at 78-82.)

Petitioner appealed the denial of Rule 37 Relief to the Arkansas Supreme Court. On June 10, 2004, the Court affirmed the trial court's decision. *Hendrickson-Atkinson v. State*, 2004 WL 1283986 (Ark. June 10, 2004) ("*Atkinson II*") (unpublished *per curiam*).

On October 13, 2004, Petitioner filed a Motion to Reopen Case with the Arkansas Supreme Court in which she argued that her direct appeal should be reopened because the Court had failed to consider whether Judge Hanshaw had exceeded his jurisdiction during the remand hearing. (Docket entry #2, Ex. 1.) The Criminal Justice Coordinator of the Arkansas Supreme Court wrote Petitioner and returned her Motion "by direction of the Arkansas Supreme Court," explaining that the Court would not permit the filing of a motion to reopen an appeal based solely on issues that were or could have been raised at trial and when the appeal was originally considered. (Docket entry #2, Ex. 2.)

Respondent has filed a Response (docket entry #10) to Petitioner's habeas Petition (docket entry #2), and Petitioner has filed a Reply. (Docket entry #15.) Thus, the issues are joined and ready for disposition. For the reasons explained below, the Court recommends that this habeas Petition be denied and that the case be dismissed, with prejudice.

---

[8]It appears that the trial court did not enter an order disposing of the Motion to Recuse.

## II. Discussion

Petitioner asserts four broad grounds for habeas relief: (1) the trial judge's alleged *ex parte* communications with the jury; (2) the trial judge's failure to recuse from her Rule 37 proceedings; (3) various ineffective assistance of counsel claims; and (4) the failure of the Arkansas Supreme Court to "review" her Rule 37 appeal. However, in her arguments supporting these grounds for habeas relief, Petitioner has made a number of additional claims, which the Court will also address. According to Respondent, all of Petitioner's claims are either barred by the doctrine of procedural default or fail on the merits.

Before addressing Petitioner's arguments, it is important to note the controlling legal principles which govern federal habeas claims. A petitioner is not entitled to relief unless he or she can show, as to those issues adjudicated on the merits in state court, that the state court proceeding:

> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "A state court's decision is contrary to . . . clearly established law if it applies a rule that contradicts the governing law set forth in [Supreme Court] cases or if it confronts a set of facts that are materially indistinguishable from a [Supreme Court] decision . . . and nevertheless arrives at a [different] result." *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003). A state court's decision involves an unreasonable application of clearly established law if "the state court applies [the Supreme Court's] precedents to the facts in an objectively unreasonable manner." *Brown v. Payton*, 544 U.S. 133, 141 (2005). The state court's factual findings are presumptively correct, and

a petitioner must come forward with clear and convincing evidence that a factual finding lacks evidentiary support. *See* 28 U.S.C. § 2254(e)(1); *Whitehead v. Dormire*, 340 F.3d 532, 539 (8th Cir.2003). The Court must apply the foregoing legal principles in analyzing the merits of Petitioner's habeas claims.

## A.  The Trial Court's Communication with the Jury

Petitioner contends that the "trial judge had improper communications with [the] jury during [the] guilt phase." Although headed as one ground for relief, Petitioner actually makes three distinct arguments regarding the jury communication issue: (1) the trial court had improper *ex parte* communication with the jury during the guilt phase of her trial; (2) trial counsel was ineffective during trial and on appeal "regarding this issue"; and (3) the trial court exceeded its "limited jurisdiction" on remand by deciding the "substance" of the issue and the "lack of prejudice" from the error, which resulted in the Arkansas Supreme Court relying on those findings "to affirm without considering jurisdiction."

### 1.  The Trial Court's Response to the Jury Note

Petitioner does not articulate the precise legal theory behind her claim that the trial court had *ex parte* communication with the jury, other than to "incorporate arguments made during Rule 37 and appeal."[9]  (Docket entry #2 at 4.)  Respondent argues that this claim is procedurally defaulted

---

[9]Neither does Petitioner articulate in her habeas papers the factual theory behind her "jury communication" claim.  However, in Petitioner's Rule 37 appeal brief she expressed her belief that Judge Hanshaw actually entered the jury room and had an unrecorded, ex parte conversation with the jury.  In support of this theory, Petitioner quotes certain statements by Judge Hanshaw during the jury-note colloquy, *e.g.*: "I'm going to tell them"; "I'm going to say that." According to Petitioner, these statements "[in] the trial record clearly reflects that Judge Hanshaw entered the jury room and gave the jury a verbal response."  *See* Petitioner's Rule 37 Appeal Brief, 2003 WL 23712221, at *86.

because Petitioner never fairly presented the claim to the Arkansas Supreme Court. In her Reply, Petitioner states the following:

> Petitioner's claim 1(a) states that the Judge had ex parte communication with [the] jury during [the] guilt phase. This claim was addressed and raised in Petitioner's Rule 37 the trial court exceeded its jurisdiction vested by the writ of certiorari regarding the State's motion to settle the record. The trial court violated [Ark. Code Ann. 16-89-125(e)] . . . . This simple fundamental statute was designed to protect a defendant's due process rights therefore when violated, the defendant has the right to a reversal of their case.

(Petitioner's Reply Brief, docket entry #15 at 2.)

Although Petitioner made no arguments concerning the jury communication issue on direct appeal, the Court nonetheless considered and decided the issue in *Atkinson I*, at least to the extent that it decided whether the prejudice from a violation of section 16-89-125(e) had been rebutted. To the extent that Petitioner relies on a violation of an Arkansas statute to support a claim for federal habeas relief, her reliance is misplaced. Federal habeas corpus relief is not available for errors of state law. *See Evenstad v. Carlson*, 470 F.3d 777, 782 (8th Cir. 2006) ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions") (internal quotation omitted). As indicated earlier, the Court is limited to deciding whether a state-court decision is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." *See* 28 U.S.C. § 2254(d)(1).

"[A] federal habeas petitioner's claims must rely on the same factual and legal bases relied on in state court." *Winfield v. Roper*, 460 F.3d 1026, 1034 (8th Cir.2006). In addition to raising a claim in state court in a timely and procedurally correct manner, a habeas petitioner must also demonstrate that she "fairly presented" the constitutional nature of her argument in state court. *Duncan v. Henry*, 513 U.S. 364, 365-66 (1995). To satisfy the "fair presentation" requirement, a

habeas petitioner must have referred the state court to "a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue." *Ford v. Norris*, 364 F.3d 916, 921 (8th Cir. 2004). Claims in a federal habeas petition that are not presented in the state court proceedings and for which there is no remaining state court remedy are defaulted. Furthermore, a habeas petitioner's default will be excused only if he shows cause and prejudice for the default or a miscarriage of justice. *Winfield*, 460 F.3d at 1034.

At first glance, *Atkinson I* suggests that the Arkansas Supreme Court analyzed and disposed of the jury-note claim based solely on whether a violation of section 16-89-125(e) had occurred and, if so, whether the State had rebutted the presumption of prejudice that arose from the violation. However, at least one sentence in *Atkinson I* suggests that the Court may have also considered whether Petitioner was harmed by a deprivation of her federal constitutional rights to be present at all critical stages in the proceedings:[10]

> Ark. Code Ann. § 16-89-125(e) (1987) provides that trial courts must call juries into open court in order to communicate with them when they have a query during deliberations. Noncompliance with this statutory provision gives rise to a presumption of prejudice, and the State has the burden of overcoming that presumption. *Rhodes v. State*, 290 Ark. 60, 716 S.W.2d 758 (1986); *Clayton v. State*, 321 Ark. 602, 906 S.W.2d 290 (1995). *The failure of a defendant and his counsel to be present when a substantial step, such as the judge's answering questions of law in the jury room is taken in defendant's case results in violation of the defendant's fundamental right to be present at any stage of the criminal proceeding is critical to the outcome.* *Goff v. State*, 329 Ark. 513, 953 S.W.2d 38 (1997). However, this court

---

[10]The right of a criminal defendant to be present at all critical stages of a criminal proceeding, including when a judge communicates with the jury, is grounded in the Confrontation Clause of the Sixth Amendment, supplemented by the Fifth Amendment Due Process Clause. *See United States v. Gagnon*, 470 U.S. 522, 526 (1985). In *Kentucky v. Stincer*, 482 U.S. 730, 745 (1987), the Court held that "a defendant is guaranteed the right to be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure."

has held that strict compliance with the rule was waived where attorneys went with the judge to the jury room, everything that happened was reported in the record, and there was no possibility of prejudice. *Martin v. State*, 254 Ark. 1065, 497 S.W.2d 268 (1973). In *Goff, supra*, on the other hand, this court held that strict compliance with § 16-89-125(e) had not been waived where the State failed to show what occurred during a trial judge's visit to the jury room.

*Atkinson I*, 347 Ark. at 351, 64 S.W.3d at 269 (emphasis added). Arguably, one could read the highlighted sentence to mean that the Court interpreted a violation of section 16-89-125(e) to equate to a violation of a defendant's "fundamental right to be present at any stage of the criminal proceeding is critical to the outcome."[11]

A fair reading of *Atkinson I* suggests that the jury communication issue was disposed of entirely as a matter of state law. Under such a reading, Petitioner's jury communication claim would be procedurally defaulted for failure to raise a federal constitutional error in the state court

---

[11]The case cited in *Atkinson I* to support a defendant's fundamental right to be present at all critical stages, *Goff v. State*, 329 Ark. 513, 953 S.W.2d 38 (1997), lends some support to this reading. In *Goff*, the Court reversed a conviction based on a section 16-89-125(e) violation where the trial judge entered into the jury room during sentencing deliberations to answer jury questions, and no record was made of the judge's exchange with the jury. The Court held that the appellant had "a fundamental right [to be present], since the trial court's failure to comply with § 16-89-125(e) resulted in both [appellant] and her counsel being absent when a substantial step was taken in [appellant's] case." *Goff*, 329 Ark. at 525, 953 S.W.2d at 45 (citing *Kentucky v. Stincer, supra*.)

In contrast, other Arkansas appellate cases appear to plainly distinguish between the statutory procedure encompassed in section 16-89-125(e) and the constitutional right of a defendant to be present at all "critical stages" of a criminal proceeding. For example, in *Howard v. State*, 367 Ark. 18, ___ S.W.3d ___ (2006), the appellant argued on appeal that an off-the-record hearing between the trial court and a juror violated his "due process right to be present at all proceedings" and that "the trial court should have followed the statutory procedures set out in § 16-89-125(e)[.]" The Court, in discussing whether these arguments were made at trial, observed that the appellant's "critical stage" argument was raised in the trial court, but that the statutory compliance argument was not. A similar distinction was recognized in *Clark v. State*, 94 Ark. App. 5, ___ S.W.3d ___ (2006), where the Arkansas Court of Appeals reached the merits of an Ark. Code Ann. § 16-89-125(e) violation, holding that the State had rebutted the presumption of prejudice arising from a violation of the statute, while declining to reach the merits of appellant's "second basis for reversal" that he had been deprived of his "right to be present at a critical stage of, or substantial step in, the proceedings," because he had not raised the objection below.

proceedings.

Even if this Court were to assume that the Court in *Atkinson I* considered and rejected Petitioner's argument that Judge Hanshaw's handling of the jury communication issue violated her *federal* constitutional right to be present at a critical stage of the proceedings, such a decision would not be "contrary to, or involve[] an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." *See* 28 U.S.C. § 2254(d)(1). Notably, "the right to be present during all critical stages of the proceedings . . . [is] subject to harmless error analysis." *United States v. Shepherd*, 284 F.3d 965, 968 (8th Cir. 2002) (quoting *Rushen v. Spain*, 464 U.S. 114, 118 n.2 (1983) (internal citations omitted)). In *Rushen v. Spain*, 464 U.S. 114, 121 (1983), the Court held that, absent a showing of actual prejudice, an *ex parte* communication between a judge and juror does not require automatic reversal and is subject to harmless error analysis.

In *Atkinson I,* the Court presumed that prejudice arose from Judge Hanshaw's communication with the jury outside of open court. Nonetheless, the Court concluded that the State had rebutted this presumption by proving that the error was harmless, based on the undisputed facts that the communication was limited to a note from Judge Hanshaw to the jury using language that was agreed to by both the prosecutor and Petitioner's counsel. Importantly, Judge Hanshaw's response simply informed the jury that the requested documents were not in evidence, and that they would have to rely on their recollection of the testimony regarding the contents of those documents.[12] Petitioner's contention that Judge Hanshaw actually entered the jury room and verbally communicated with the jury is contrary to *all* of the witnesses' testimony during the remand hearing and appears to be based purely on speculation. Petitioner certainly has not come forward with clear

---

[12]Petitioner does not claim that the documents requested by the jury were in fact in evidence.

and convincing evidence to rebut the presumption of correctness which attaches to the findings of fact by the Arkansas Supreme Court in *Atkinson I*. For the foregoing reasons, the Court recommends that this claim for habeas relief be denied.

### 2. Ineffective Assistance of Counsel Regarding the Trial Court's Jury Communication

Petitioner next argues that her attorney was constitutionally ineffective because, on direct appeal, he failed to raise the issue of the trial court's improper communication with the jury. Petitioner raised this argument as a ground for Rule 37 relief, and, on appeal from the denial of Rule 37 relief, she argued that counsel was ineffective because he "failed to raise the trial court's violation of § 16-89-125(e) on appeal[.]" *Atkinson II*, 2004 WL 1283986, * 2. The Court rejected this argument, holding that Petitioner failed to demonstrate that she had been prejudiced. The Court noted that, while Petitioner's attorney did not raise the jury communication issue on direct appeal, it had nonetheless reached and decided that issue in *Atkinson I*:

> In denying postconviction relief, the trial court held that while the requirements of § 16-89-125(e) were not strictly followed, "there was substantial compliance and the Petitioner was not prejudiced by the note." The trial court added that the issue had previously been addressed by this court and that Rule 37 does not provide an opportunity to relitigate issues settled on appeal. Because we have previously decided this issue, appellant cannot show that he was prejudiced by counsel's failure to raise it on appeal.

*Atkinson II*, 2004 WL 1283986, *3.

In order to prevail on an ineffective assistance of counsel claim, Petitioner must demonstrate that her attorney's performance was deficient, and that the deficiency prejudiced her defense. *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). The first prong requires a showing that counsel's performance fell below an objective

standard of reasonableness. *Winfield v. Roper*, 460 F.3d 1026, 1033 (8th Cir. 2006). If objectively unreasonable performance is established, the second prong requires a showing that there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been more favorable to Petitioner. *Lyons*, 403 F.3d at 594.

As previously explained, even if this Court concluded that *Atkinson I* could fairly be read to hold that the Petitioner was not harmed by any deprivation of her federal constitutional right to be present at all "critical stages" of the proceedings, Petitioner still would not be entitled to federal habeas relief. As the Court correctly noted in *Atkinson II,* Petitioner simply cannot show any prejudice resulting from her attorney's failure to argue the jury communication issue, which was determined to be without merit on direct appeal. Thus, the Court recommends that this ground for habeas relief be denied.

### 3.     The Trial Court's Jurisdiction To Act Following Remand

Petitioner argues that, during the remand hearing, Judge Hanshaw exceeded his "limited" jurisdiction by deciding the facts surrounding the jury communication issue. According to Petitioner, the Arkansas Supreme Court merely remanded the case to Judge Hanshaw for a determination of "whether, and in what manner" he had communicated with the jury. Petitioner adds that she was deprived of due process because the Arkansas Supreme Court relied on Judge Hanshaw's factual findings "in excess of the jurisdiction invested" to affirm her conviction, without notice to her.

While it is difficult to understand how these allegations entitle Petitioner to habeas relief, it is unnecessary for the Court to reach the merits of this claim. Petitioner did not object to the scope of the trial court's jurisdiction at the remand hearing, and did not argue on appeal to the Arkansas Supreme Court that the trial court had exceeded its jurisdiction. Thus, Petitioner has procedurally

defaulted this claim by failing to fairly present the argument in state court.

To obtain review of a defaulted constitutional claim, a habeas petitioner must demonstrate cause and prejudice, or a miscarriage of justice. *Winflied v. Roper*, 460 F.3d 1026, 1038 (8th Cir. 2006). "[T]he existence of cause for procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier* 477 U.S. 478, 488 (1986). If a petitioner fails to demonstrate cause, the Court need not address prejudice. *See Mathenia v. Delo*, 99 F.3d 1476, 1481 (8th Cir.1996).

Liberally reading Petitioner's habeas papers, she may be claiming cause to excuse procedural default based upon state officials wrongfully refusing to consider her attempts at making the jurisdictional argument. In her papers, Petitioner refers to two motions she filed or attempted to file with the Arkansas Supreme Court: (1) her November 15, 2001 *pro se* motion asking that the case be remanded for a second hearing to settle the record with a new judge and new appointed counsel; and (2) her October 13, 2004 *pro se* motion (tendered but unfiled) in which she expressly argued that Judge Hanshaw exceeded his jurisdiction and that the Court in *Atkinson I* wrongfully relied on Judge Hanshaw's factual findings. The Court dismissed Petitioner's first *pro se* motion because she was represented by counsel at the time, and it refused to allow the second motion to be filed because it raised issues that were or could have been raised at trial or on direct appeal.[13] Petitioner makes no convincing legal argument explaining how either of these procedural rulings were incorrect, or how

---

[13]On October 13, 2004, the Criminal Justice Coordinator of the Arkansas Supreme Court wrote Petitioner and returned her Motion "by direction of the Arkansas Supreme Court," explaining that the Court would not permit the filing of a motion to reopen an appeal based solely on issues that were or could have been raised at trial and when the appeal was originally considered. (Docket entry #2, Ex. 2.)

her motions, rejected by the Arkansas Supreme Court on adequate and independent procedural grounds, preserved any arguments for federal habeas review. Moreover, she has not established that these rulings were external factors to the defense which impeded her efforts to comply with state procedural requirements.

**B.      Judge Hanshaw's Failure to Recuse**

According to Petitioner, Judge Hanshaw's failure to recuse from the Rule 37 proceedings violated her right to due process. To support this claim, Petitioner makes a number of different arguments, which requires a thorough review of the procedural history of the "recusal" issue.

At trial, Petitioner did not move for the recusal of Judge Hanshaw, nor did she argue on direct appeal that Judge Hanshaw should have recused from the trial proceedings, including the remand hearing to develop the jury communication issue. On November 15, 2001, several weeks *after* the remand hearing, but two weeks *before* the submission of Petitioner's direct appeal, she filed a *pro se* motion with the Arkansas Supreme Court expressing "dissatisfaction" with the performance of counsel at the remand hearing and requesting, among other things, that the case be remanded for a second hearing, with a new judge and new appointed counsel. *See Hendrickson-Atkinson v. State*, 2001 WL 1558355 (2001) (unpublished *per curiam*). The Court dismissed that motion because Petitioner was represented by counsel on direct appeal. *See id.* at *1.

On March 28, 2002, Petitioner filed her Rule 37 Petition, along with a separate Motion to Recuse, in Lonoke County Circuit Court. In her Rule 37 Petition, she argued that counsel was ineffective for, among other reasons, failing to request that Judge Hanshaw recuse from the remand hearing, and that Judge Hanshaw should have recused *sua sponte*. According to Petitioner, recusal was warranted because Judge Hanshaw presided over the remand hearing in which he was a

"material witness" in violation of the Arkansas Code of Judicial Conduct. (Rule 37 Tr. at 36-67.) In her Motion to Recuse, Petitioner repeated the recusal arguments regarding the remand hearing but added a claim that Judge Hanshaw should recuse from her Rule 37 proceeding because she intended to call Judge Hanshaw as a witness. (Rule 37 Tr. at 31-32.)

On May 30, 2002, Judge Hanshaw entered an "Order Denying Rule 37 Petition." In addressing Petitioner's argument that "counsel was ineffective for not asking [the Court] to recuse at the hearing to correct the record," the Court stated the following:

> This Court was issued a writ of certiorari requiring that it provide the Arkansas Supreme Court with a complete record of the events surrounding the jury's questions. [Ark. R. App. P.-Civ. 6(e)] requires that correction or modification of the record be settled by the original court. The Court was not called as a witness in the matter but did make findings of fact based upon its prior knowledge of this case which consisted of previous judicial proceedings in this case. There was no reason for the Court to recuse and therefore [Petitioner] cannot demonstrate prejudice based on her counsel's failure to ask that [the Court] recuse.

(Rule 37 Tr. at 79-80.) Beyond disposing of the ineffective assistance of counsel claim, Judge Hanshaw did not rule on Petitioner's arguments that: (1) he should have *sua sponte* recused from the remand hearing; and (2) he should recuse from the Rule 37 proceeding.

In Petitioner' Rule 37 appeal, her "recusal" argument was headed as an ineffective assistance claim in which she argued that her attorney "fail[ed] to request Judge Lance Hanshaw to recuse from the hearing to settle the record." *See* Petitioner's Rule 37 Appeal Brief, 2003 WL 23712221 at *77. In rejecting Petitioner's ineffective assistance claim, the Court stated the following:

> [Petitioner] claims that counsel was also ineffective for failing to request that the trial judge recuse himself from the hearing to settle the record. In denying relief, the trial court noted that it had been issued a writ of certiorari requiring that it provide this court with a complete record of the events surrounding the jury's questions. In accordance with that writ, the trial court held a hearing to settle the record. According to the court in the Rule 37 proceedings, there was no reason for the judge to recuse;

therefore, [Petitioner] was unable to demonstrate prejudice based upon counsel's failure to make such a request. Again, we have previously held that the judge's actions were not prejudicial to [Petitioner], *see [Atkinson I], supra*; therefore, any request by counsel for recusal would have been unsuccessful. The trial court's denial of relief on this point is affirmed.

*Atkinson II*, 2004 WL 1283986, at *3.

Thus, it appears Petitioner has made at least three different recusal arguments in her lower-court post-conviction petitions: (1) Judge Hanshaw should have *sua sponte* recused from the remand hearing; (2) trial counsel was ineffective for failing to request that Judge Hanshaw recuse from *the remand hearing*; and (3) Judge Hanshaw should have recused from *the Rule 37 proceedings*.

In her federal habeas Petition, Petitioner claimed only that she "was denied her due process rights by Judge Hanshaw refusing to recuse from the Rule 37 proceedings." (Docket entry #2 at 4.) Respondent pointed out in his Response that Petitioner had procedurally defaulted this claim by failing to raise it in her appeal to the Arkansas Supreme Court.[14]  In her Reply, Petitioner sought to avoid Respondent's procedural default argument by changing her claim and arguing that her attorney was ineffective for failing to request Judge Hanshaw to recuse from the *remand hearing*: "Judge Hanshaw violated [judicial canons] in that he should have disqualified himself from the hearing to settle the record in which [his] impartiality is more than reasonably questioned because he was a material witness at the hearing that focused on his improper communications with the jury. . . .  The trial judge cannot preside over a hearing in which it will be a witness[.]" (Docket entry #15 at 2.) In *Atkinson II*, the Court addressed and rejected this ineffective assistance of counsel argument on the ground that Petitioner did not demonstrate prejudice under the second prong of *Strickland*.

_____

[14]In Petitioner's Rule 37 appeal, she claimed only that Judge Hanshaw improperly denied Rule 37 relief without holding an evidentiary hearing, and entered an order "prepared by the State."

According to Petitioner, Judge Hanshaw essentially testified during the remand hearing in violation of various provisions of the Arkansas Code of Judicial Conduct, Rule 605 of the Arkansas Rules of Evidence, and Arkansas case law. Thus, Petitioner claims her attorney was ineffective because he did not move to have Judge Hanshaw recuse from the remand proceeding. She also asserts that this constituted a violation of her "due process rights."[15]

The Due Process Clause guarantees a criminal defendant a "fair trial in a fair tribunal, before a judge with no actual bias against the defendant or interest in the outcome of his particular case." *Bracy v. Gramley*, 520 U.S. 899, 904-05 (1997) (internal quotations and citations omitted). However, in most instances a judge's qualifications to hear a case do not present constitutional questions, and "are, in most cases, answered by common law, statute, or the professional standards of the bench and bar." *Id.* This is because the "Due Process Clause of the Fourteenth Amendment establishes a constitutional floor, not a uniform standard." *Id.* (citing *Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813, 828 (1986)). Unlike certain statutes and rules, the Due Process Clause does not require a judge to recuse based on the appearance of impropriety alone. *See, e.g., Johnson v. Carroll*, 369 F.3d 253 (3rd Cir. 2004) (surveying cases to note that the United States Supreme Court "has not held, not even in dicta, let alone 'clearly established,' that the mere appearance of bias on the part of a state trial judge, without more, violates the Due Process Clause"); *United States v. Sypolt*, 346 F.3d 838, 840 (8th Cir. 2003) ("In contrast to the due process clause, the [federal] recusal statute is concerned largely with insuring that the federal judiciary appears to be impartial, in addition to actually being impartial").

---

[15]Despite passing references to "due process" in Petitioner's post-conviction papers, the main thrust of her recusal argument is cast in terms of alleged violations of Arkansas state law.

Regardless of whether Judge Hanshaw should have recused from the remand hearing under applicable state law, the Court is satisfied that Petitioner was not deprived of due process under the facts of this case. Petitioner has not shown that Judge Hanshaw's recusal would have made a difference in the outcome of her appeal. In denying Rule 37 relief, Judge Hanshaw found that he would not have recused had counsel so moved.

More importantly, even assuming that another fact-finder had presided over the remand hearing, there is no basis from which to conclude that another judge would have found the facts differently from Judge Hanshaw. All of the remand hearing testimony was *undisputed*. This undisputed testimony established that Judge Hanshaw prepared a written response to the jury, as stated in the trial transcript, without objection from the parties. Moreover, the testimony unequivocally established that the bailiff took the written response from Judge Hanshaw and delivered it to the jury room. Thus, because Petitioner cannot demonstrate that Judge Hanshaw's failure to recuse deprived her of due process, she cannot show prejudice under *Strickland* based on counsel's alleged ineffectiveness in not requesting recusal.

Under these circumstances, Petitioner has failed to show that the Arkansas Supreme Court's *Strickland* analysis of Petitioner's recusal argument is contrary to, or an unreasonable application of, federal law, nor an unreasonable determination of the facts based on the record of the state court proceeding. Thus, the Court recommends that this ground for habeas relief be denied.

## C. Petitioner's Other Ineffective Assistance of Counsel Claims

### 1. Ineffective Assistance - Counsel's Performance on Direct Appeal

Petitioner, in arguing that she received ineffective assistance of counsel during her direct appeal, states the following:

Trial counsel did not represent Petitioner on appeal as ordered. Rather, he pawned the work off to [attorney] Alvin Schay for $500.00. Mr. Schay filed an appellate brief without briefing the Court on the ex parte issue. Mr. Stratford did not sign his name to the appellate brief. Schay forged Stratford's name to a motion for attorneys' fees.[16]

(Docket entry #2 at 5.) The Arkansas Supreme Court rejected this argument in Petitioner's Rule 37 appeal:

On the issue of Stratford's obligation to file the appellate brief and raise the issue of the judge's communication with the jury, the trial court held that this issue had been ruled upon by this court and that appellant had failed to show prejudice. We agree. Because a previous ruling has been issued on this point, appellant is unable to show that had Stratford, or any other attorney for that matter, raised the issue, that the result would have been different. Regarding appellant's claims that Schay prepared the brief in exchange for $500 and submitted a motion for attorney's fees containing false statements, the trial court did not rule on these issues; therefore, they are not preserved for appellate review. *See Beshears, supra* [stating appellant's burden to obtain a ruling from the trial court to preserve issue for appellate review]. Finally, appellant's bare allegation that an "unknown attorney, the State, an inmate, or some other unknown, unlicensed person off of the street" prepared her brief, will not support a claim of ineffective assistance of counsel. *See Camargo v. State*, 346 Ark. 118, 129, 55 S.W.3d 255, 263 (2001).

*Atkinson II*, 2004 WL 1283986, at *4.

With respect to Petitioner's argument that counsel was ineffective for failure to argue the "ex parte" jury communication issue on direct appeal, this Court has already addressed that issue in section II(A)(2), *supra*. To reiterate the Court's conclusion here, Petitioner has not shown that she was prejudiced by counsel's failure to raise the argument.

---

[16]Petitioner's appeal brief bore Stratford's name. However, during her Rule 37 proceeding, Petitioner produced a letter from Schay to Stratford, referencing Petitioner's direct appeal, in which Schay wrote "[h]ere is a copy of the motion for attorney's fee I mailed to the court today. This is one of the case where you paid me $500.00, so you get that back when the court awards a fee." Petitioner also produced a copy of an unfiled motion for attorneys' fees, styled in her direct appeal, that is apparently signed by Stratford, although Petitioner claims that Schay forged Stratford's signature on the motion.

Beyond that, the *Atkinson II* Court declined to reach the merits of Petitioner's claims that Stratford paid Schay $500.00 to write the brief and that Schay forged Stratford's name on the motion for attorneys' fees because Petitioner had failed to obtain a ruling from the trial court on those claims. This ruling constitutes an adequate and independent state ground that bars review of those claims. Thus, Petitioner is in procedural default.

Petitioner has presented no arguments or facts to establish cause and actual prejudice, or actual innocence, to excuse her procedural default.[17] Accordingly, the Court recommends that this ground for habeas relief be denied.

**2.      Ineffective Assistance - Counsel's Performance at the Remand Hearing**

According to Petitioner, her attorney at the remand hearing was constitutionally ineffective because he "did not object to anything at the hearing to settle the record, did not re-brief, and did nothing." (Docket entry #2 at 5.) Beyond this conclusory allegation, Petitioner does not explain what it is that her attorney should have objected to or done at the remand hearing. In her Reply, she explains that this argument includes her attorney's failure to object to the trial court's findings on remand and to brief those issues. (Docket entry #15 at 3.)

In *Atkinson II*, the Court held that Petitioner had procedurally defaulted her argument that her attorney was ineffective for failing to object to the trial court's findings in the remand hearing because she did not obtain a ruling on the argument in her Rule 37 proceeding:

> Appellant claims that counsel was ineffective for failing to object to the trial court's findings at the hearing to settle the record. According to appellant, because the State's

---

[17]Assuming for the sake of argument that Petitioner was not in procedural default on these claims, she fails to explain how the issue of Stratford's payment for the appellate brief, or the allegedly forged and "false" attorneys' fees motion, would entitle her to habeas relief given that the *Atkinson I* Court reached the merits of the very issue she argues went unbriefed.

motion to settle the record did not ask the court to determine the contents of the note to the jury, the court should not have considered the note. Appellant claims that the court made additional findings that were outside of the State's request and that counsel should have made an appropriate objection.

The trial court did not rule on this issue in its order denying postconviction relief. It is appellant's obligation to obtain a ruling from the trial court in order to properly preserve an issue for review. *Beshears v. State*, 340 Ark. 70, 72, 8 S.W.3d 32, 34 (2000). Appellant's claim that counsel was ineffective for failing to brief this particular point on appeal is also barred for the same reason. *See id.*

Atkinson II, 2004 WL 1283986, at *3-4.

The Court's holding on this point, which was based on well-established state law, constitutes an adequate and independent state ground that bars review of those claims in this federal habeas action.

Finally, Petitioner has not articulated any facts to support either the cause and prejudice or actual innocence exceptions to procedural default in connection with this ineffective assistance of counsel claim. Accordingly, the Court recommends that this ground for habeas relief be denied.

### 3. Ineffective Assistance - Failure to Call Shannon Ball as a Witness

Petitioner makes a one sentence argument, with no explanation or reasoning, that her attorney was ineffective for failing "to present the testimony of Shannon Ball." (Docket entry #2 at 5.) Respondent argues that the claim is procedurally defaulted because it was never fairly presented to the Arkansas Supreme Court. In her Reply, Petitioner claims that she raised the issue in her Rule 37 appeal and that Ball would have presented evidence of Petitioner's innocence and "was not a matter of strategy." (Docket entry #15 at 4.)

In her Rule 37 Petition, Petitioner claimed that Lackie, who was jailed with Ball, confessed to Ball that Petitioner had nothing to do with the murder, and that Lackie implicated Petitioner in

retaliation for her refusal to continue a relationship with him. (Rule 37 Tr. at 39.) Petitioner

claimed that Ball told her attorney this in an interview, but that her attorney failed to take the

necessary steps to secure Ball's presence at trial. *Id.* The trial court denied Rule 37 relief on this

point, concluding that the matter was one of "trial tactics and strategy" which did not warrant post-

conviction relief. (Rule 37 Tr. at 80.)

While Petitioner claims that she raised this issue in her Rule 37 appeal, her appellate Brief

*omits any reference* to Shannon Ball, or the alleged failure of her attorney to call witnesses at trial

as a ground for relief. *See* Petitioner's Rule 37 Appeal Brief, 2003 WL 23712221. However, in her

Reply Brief, she argues *for the first time* that, had "counsel maintained his professional demeanor,

he would have vigorously fought for Appellant's interests, and introduced the testimony of Shannon

Ball . . . trial counsel's failure to call Shannon Ball as a witness was not a matter of strategy, rather

deficient performance which resulted in prejudice to Appellant." *See* Petitioner's Rule 37 Appellate

Reply Brief, 2003 WL 23712222, at *15. The Court's decision in *Atkinson II* contains no mention

of Ball or Petitioner's belated ineffective assistance argument concerning her attorney's alleged

failure to call witnesses.

Thus, the Court agrees with Respondent that Petitioner did not fairly present this argument

to the Arkansas Supreme Court.[18] Although not discussed by the Court in *Atkinson II*, it is well-

established Arkansas law that an appellate court will not consider arguments that are raised for the

first time in a Reply Brief. *See, e.g.*, *Owens v. State,* 354 Ark. 644, 659 n.1, 128 S.W.3d 445, 455

(2003) ("this court has repeatedly held that an argument cannot be raised for the first time in a reply

---

[18]Petitioner has presented no arguments or facts to establish cause and prejudice, or actual
innocence, to excuse her procedural default.

brief"); *Echols v. State*, 354 Ark. 530, 553, 127 S.W.3d 486, 500 (2003) (explaining that the reason for the "well-settled rule" that arguments raised for the first time in a reply brief is that "the appellee is given no opportunity to respond to the argument"). Accordingly, the Court recommends that this ground for habeas relief be denied.

### 4. Ineffective Assistance - Conflict of Interest

Finally, Petitioner argues that her attorney was constitutionally ineffective because he worked under a "penile conflict of interest." (Docket entry #2 at 5.) In Petitioner's Rule 37 proceedings, Petitioner argued that her counsel provided her with constitutionally ineffective assistance in retaliation for rejected sexual advances. On appeal, Petitioner also argued that counsel worked under an actual conflict of interest arising from his sexual desire for Petitioner. The Arkansas Supreme Court rejected both of these claims:

> [Petitioner's] final claim on appeal is that the trial court erred in rejecting her claim that Stratford rendered ineffective assistance of counsel in retaliation for her rejection of his sexual advances. According to appellant, counsel represented conflicting interests which adversely affected his performance. This specific claim dealing with an alleged conflict of interests was not raised in [petitioner's] Rule 37 petition. We will not consider arguments raised for the first time on appeal. *Nooner v. State*, 339 Ark. 253, 256, 4 S.W.3d 497, 499 (1999).
>
> Appellant cites the following examples of Stratford's "lapses of professional judgment" as a result of her rejection of his sexual advances: (1) counsel allowed the trial court to engage in communication with the jury in violation of § 16-89-125(e); (2) counsel allowed the trial court to preside over the hearing to settle the record and failed to object to the court's findings; and (3) counsel allowed another attorney to file appellant's brief on direct appeal. This is simply another attempt by appellant to litigate claims that we have previously held resulted in no prejudice to appellant. Moreover, appellant's assertion that counsel made sexual advances, alone, without any citation to authority or convincing argument, is insufficient to merit postconviction relief. *Womack v. Foster*, 340 Ark. 124, 158-59, 8 S.W.3d 854, 874 (2000). Therefore, we affirm the trial court's ruling on this point.

*Atkinson II*, 2004 WL 1283986, at *4.

Because the Court rejected the conflict of interest argument on state procedural grounds, this constitutes an adequate and independent state law basis for denying this claim. Petitioner has come forward with no facts or arguments to establish any support for a claim of cause and prejudice or actual innocence.

With regard to the ineffective assistance of counsel portion of this argument, the Court in *Atkinson II* concluded that Petitioner was using the bare allegation of sexual impropriety to relitigate other ineffective assistance claims, without citing any convincing legal argument. Petitioner fails to explain how this decision was contrary to, or an unreasonable application of federal law, or an unreasonable determination of the facts.

Thus, the Court recommends that both aspects of this argument for habeas relief be denied.

## D.    The Arkansas Supreme Court's Review of Petitioner's Rule 37 Appeal

Petitioner contends that the Arkansas Supreme Court did not "review" her Rule 37 appeal. Petitioner claims that the *per curiam* opinion handed down in *Atkinson II* was drafted and filed by the Criminal Justice Coordinator employed by the Court, and that the Court has essentially abrogated its duty to review her postconviction proceeding. Petitioner characterizes this as a violation of due process and "fundamental fairness." Petitioner claims that this was "unknown" in state court and that there is no state remedy available for her to correct this process prior to federal habeas review.[19]

The fact that a court may delegate the drafting of decisions or orders to a staff attorney or law

_____

[19]Respondent claims that this argument is procedurally defaulted because Petitioner did not fairly present it, as she could have filed a petition for rehearing or error coram nobis so that the Arkansas Supreme Court "could have directed [Petitioner] to pursue" an appropriate remedy. (Docket entry #10 at 6.). Respondent cites to no Arkansas case law specifically proving such a remedy to what is a novel claim. The Court need not decide whether Petitioner's argument is procedurally defaulted because it is clearly without merit.

clerk is routine and unremarkable. Beyond that, Petitioner's claim that the Arkansas Supreme Court did not decide her Rule 37 appeal is pure speculation, without any support in the record. There is nothing to indicate that the Arkansas Supreme Court did not review and render the decision made in Petitioner's appeal. Based on the record, the Court sees no need to conduct what would essentially be an inquiry into the inner workings of the Arkansas Supreme Court and its staff. Thus, the Court recommends that Petitioner's final ground for habeas relief be denied.

### III. Conclusion

IT IS THEREFORE RECOMMENDED that the Petition for Habeas Corpus under 28 U.S.C. § 2254 (docket entry #2) be DENIED, and that this case be DISMISSED, WITH PREJUDICE.

Dated this 24th day of April, 2007.

_____
UNITED STATES MAGISTRATE JUDGE